The next case today is Richard R. Cushing et al. v. Sherman Packard, Appeal No. 21-1177. Attorney Piedra, please introduce yourself for the record and proceed with your argument. May it please the Court, Attorney Israel Piedra on behalf of the appellants in this matter, and with the Court's permission, I would like to reserve two minutes for rebuttal. You may. Thank you, Your Honor. I'd like to start by putting this case in the proper context, which I think distinguishes it from the cases relied on by the district court. This is a case about a state discriminating against a protected class, disabled people, and the district court's holding that a state legislature can effectively discriminate with impunity against them. This is an action under Title II of the ADA, which explicitly binds state… Mr. Piedra, are you saying then that you're abandoning the general argument with respect to legislative privilege and focusing really on your count two, that is the ADA or Rehabilitation Act case count? I'm not sure I follow your question, Your Honor. You could say, and you did, at least below, that the general attack on the legislative privilege here or the legislative action here was one more general, that they simply couldn't do that. Let me put it differently. I'm sorry I'm not being clear. It seems to me that your focus is on the ADA and the Rehabilitation Act in a protected class, whether or not your clients are a protected class. That's it here, isn't it? Well, I think that's… I wouldn't say we've abandoned. If I'm understanding you correctly, Your Honor, there's kind of two major prongs to our argument. One is that legislative immunity does not apply in this context at all because we're suing effectively the state, which doesn't carry such a personal immunity. I'm not sure if that's what the… But it's meaningless unless there's some sort of protected class involved. This is not a trick question. It's really to try to apply Occam's Razor to a proliferating number of theories presented in this case. Yeah, and I apologize, Your Honor. I really am not following your question. And I apologize for putting it that way, but proceed. I'm trying to get a handle on this case that makes me understand why it is that we should do something that, by and large, is quite unusual. Sure, and if Your Honor… I'm eager to answer your question if my remarks frame it. I'm sure you'll clarify for me what I'm not clarified about, so go ahead. I'm sorry. Thank you, Your Honor. So, again, one part of our argument is that the context of this case and the statute implicated distinguishes it from the other precedent relied on by the district court. Again, this is a statute that explicitly binds state entities, including state legislatures. It was passed pursuant to the enforcement clause of the 14th Amendment, which specifically contemplates federal intrusion into state sovereignty, including the state legislative process. The entire purpose of the 14th Amendment is to provide federal protections in areas which might otherwise be outside of the scope of Congress's power. The Act further provides that state entities should be treated the same as any other private defendant. It authorizes the Department of Justice to enforce the Act. It simply invokes the full power of Congress to address the wide-ranging and systemic issue of unequal access for disabled persons. So we think that those factors put this case in a very different context than the Harwood case in Consumers Union, which were relied upon by the trial court. Suppose we were to agree with you on the merits and then issue a decision in your favor, and then the Speaker of the New Hampshire Assembly decided to proceed otherwise and said he's not going to acknowledge any votes by anyone who is trying to participate remotely. How would the district court go about enforcing our order? Thank you, Your Honor. So I think that in that context, an order would generally be issued, first of all, to the state itself and the state legislature. So that's the first piece of that question. But I'm saying you've got your order. Now how does it get enforced? Doesn't it necessarily have to be enforced against the Speaker of the Assembly? Well, actually, the defendant argued and the district court kind of implicitly found that the Speaker of the House does not have the power to waive or change the rules him or herself. So in this situation, it's not clear that the Speaker could be the one solely held responsible. So would you bring in the whole assembly in cuffs? Well, it's a difficult question, Your Honor. And obviously, I don't think it would come to that point. It's difficult because it goes right to the heart of your first claim that this is an action against the state and I'm having trouble following that when I think how we would go about enforcing your order. It would do you no good just to arrest the state. Sure, Your Honor. And I think that same dilemma occurs whenever a federal court orders a state to do something. Desegregating schools, for example, the state has to carry that out through its agents. I think once the court issues an order to the state, the carrying out of that order becomes, in effect, almost ministerial and that the court, by initiating contempt proceedings or whatever in that regard, But who is going to be the addressee of the contempt citation? Yeah, and I think that your honors are right, that it eventually would be the legislators themselves. Though, and I think in that context, once the state has issued a general order to the state, that contempt citation would not implicate the considerations at play here. Again, I would construe that order as essentially a ministerial command at that point. But who is the minister who is going to carry out that command? If the alternative is using Ex parte Young to reach a representative of the state, presumably it's the person who records the votes, maybe? I don't know. But there has to be somebody who's an addressee for this to be an effective order, as opposed to a general adjuration, I guess. Sure, and I think your honor is right that it's potentially a legislator, though it's potentially multiple legislators, but it's also potentially the clerk of the house who calls the roll and who tracks the votes. The clerk of the house is not a defendant in this case, is he? No, but once the state has been enjoined to do a certain thing, I don't think that under the precedent of this court, that the court would then need to name the individual officers as parties in order to enforce its order against the state. There might be some due process problems with that? Well, I disagree because the clerk of court is part of the house as a body. He is a representative of the house. He's on notice of the suit. He participated as a witness in the suit at the trial court. So there's certainly notice here that would, in my mind, obviate any due process concerns. Again, the bottom line to me is Congress has ordered through the Title II of the ADA that states and state entities are required to comply with this act. Let me ask you another implementation question along those lines. In other words, suppose the assembly says, well, who decides what underlying medical conditions are serious enough to warrant not attending with a mask? Who decides whether the requirement should be you have to get a vaccine, then you can attend? Well, the house and the general court, which is the legislature of the state, actually has a Title II ADA coordinator. That's an appointed position within the state legislature who receives ADA requests and makes decisions about them. Part of the ironic thing about this case is that there is such a position. It's an employee within the state legislature. There's a Title II ADA compliance notice on the state house's website. So there are structures in place, and they're not legislators who carry out and make those decisions. It's another administrative employee making that administrative decision. And has that been exhausted? Has that been pursued here by your clients? It has, Your Honor. Yeah, the record does indicate that ADA reasonable accommodation requests were made to this individual, either directly or indirectly. And in most cases, no responses were received. And why don't the vaccinations move this case? Well, I think the practical effect is that the number of legislators who are requesting, who are still eligible for accommodation, are very low. People who either have not received both doses, have not had the appropriate two-week waiting period after the second dose. Of course, that's an issue, in my mind, for the trial court on remand, as part of the reasonable accommodation inquiry, that it did not reach. But I guess I can represent to the court that there are some circumstances. We have three days of session later this week where individuals still are not completely vaccinated. But it sounds like unless we get an opinion out in two weeks, the case is moved. I won't agree to that, Your Honor, respectfully. I think that there are still circumstances here where a condition is severe enough, and the particular circumstances at the session days are such, where unfortunately there's dozens of individuals not wearing masks or complying with other types of safety precautions where a court could find it's still reasonable. So now you're saying it's an ADA violation to require a vaccinated person to appear in person? I'm not saying that, Your Honor. Then if everyone's vaccinated within a week or two, then that would seem to leave no case. I can't represent to the court exactly what each individual plaintiff's vaccine situation is. I think that the court is certainly correct that it has widowed the number of plaintiffs who would still be eligible for this accommodation as reasonable. I can't say exactly what the timeline would be or if it would apply for every situation. Were legislators given priority? Were they in the first round? No, Your Honor. They've been subject to the same schedules as everyone else. So you've got particular individuals who are at issue here. Has any of them not been vaccinated? My understanding, and I don't know the details of every single individual, but my understanding is that some individuals have still not received their second vaccine or have not cleared the waiting period. So everyone's received their first vaccination? I think the majority have. I just cannot answer the question with complete certainty. I'm not aware of it. Do you know of any one of your clients who have not received the first vaccination? I do not. Are any of your clients taking the position that they don't have to be vaccinated or that they don't choose to be vaccinated? I'm not aware of that, Your Honor, but that's part of the reason why I'm trying to be a little bit undefinitive here is that I'm not sure if there are particular medical or religious or whatever circumstances which mean that some of my clients are not receiving the vaccine at all. Frankly, I had not investigated that fully because, again, I consider that an issue for remand. Would a religious objection fall under ADA? No. Well, I don't think it would fall under the ADA. It would be a reason why potentially the accommodation requested here would continue to be reasonable because they still do not have that invulnerability to the virus that vaccinated individuals would have. Certainly, I think the ADA is flexible enough that it considers that as part of the reasonableness inquiry that the trial court would have to make. It's sounding like an issue that was ripe and very significant and important a couple of months ago, but I'm having trouble understanding now what the dispute is about. If everybody's been subject to the caveat that you may not know someone, so you're not conceding it totally, but it seems like everyone's had a chance to get vaccinated, so it's hard to understand then what the problem is. I appreciate that, Your Honor. I would say a couple of things. One is we do have these sessions coming up later this week, and there will be potentially representatives and their constituents that are completely disenfranchised by not attending. Votes that will go one way or another on important pieces of legislation because of them not attending. So I think that there's certainly still a clear and present dispute. I would also, again, just say without a factual determination by the trial court, I'm not sure it's 100% clear that even with vaccination, the requested accommodation is not reasonable. We didn't litigate that issue. Has the ADA administrator, whatever the term is for it, given a reason why he or she has not responded to the request, or is it simply silence? It's mostly silence, confirmation of receipt, but the communications have mostly been through the House office itself, the House Speaker's office itself, saying because we don't have a rule allowing this, we can't allow this, regardless of what the ADA says. That, we think, is just untrue considering the purpose of this act, which is to abrogate a state sovereignty, interfere or inject itself into the legislative process even, and especially with regard to the Rehabilitation Act claim where this entity, as the House, accepted federal funds for the purpose of running sessions during the pandemic. As the court knows, the Rehab Act says that once you accept federal funds, you're bound by the anti-discrimination provisions of that statute. It's undisputed here that they've received those federal funds, and it would completely turn the purpose of that act on its head by allowing the House, as an entity, to avoid the protections of the act and the strictures of the act when they've accepted federal funds that trigger their obligations under the act. Was this argument made below? It was, Your Honor, and respectfully to the district court, I thought that there was insufficient portion of its opinion addressed to this question. Perhaps that's, in part, my fault. I'm sure it is, by not focusing on it enough. But it certainly was raised below. It was decided by the district court. It was briefed for this court, and I think it best illustrates what the defendant here is trying to do, which is avoid the specific mandates of Congress to avoid discrimination against disabled persons. Again, I just wanted to highlight the funds that were received were used during the pandemic for remote voting technology and other incidents of holding session during the pandemic, which is obviously precisely what this case is about. Any more questions? What are the dates of the upcoming sessions? Wednesday, Thursday, and Friday of this week, Your Honor. So you're telling us today that to give you meaningful relief, we need to get a decision out tomorrow.  But I think that for the vast majority of plaintiffs, perhaps not all, that Your Honor is right, the more time that passes, the less likely that this accommodation would be considered reasonable by a trial court. You've talked about sessions this week. Are there any more scheduled in the future? There have not been any definitive dates announced yet, Your Honor. There will be sessions in the future, but these are the only three that are currently on the calendar. Would you be anticipating any more for April or May specifically? I believe that there will be some certainly in May, if not later in April. Can I raise an issue that may frame this a bit? And you have to answer it, or you will be invited to answer it without knowing the question. Your brother is going to get the same question, so he'll have a chance to think about it. But if we look at this in terms of only the plaintiffs here, and it's the plaintiffs' interests, although they radiate out to their constituents and so on, but it's really the plaintiffs' interests here. It is that their votes are not getting recorded. They don't get to participate, and their votes are not getting recorded. Now, if the general court were to take votes, and those votes would be sufficient without their participation one way or the other, that at least would say that their interests have been addressed, or at least don't need to be addressed. And then we can deal with, if we have to, later on, the larger questions under a more reasonable schedule. You don't have anything else other than your clients who want to participate and have been elected to participate and can't participate, and that means their vote can't be heard or can't be received. But if it's not going to make any difference, then that's a no harm, no foul kind of problem for purposes of irreparable harm. Do you have a response to that or not? Well, I think that's a pretty big but. I mean, we're talking about the rights of persons to be represented in government. That's not what the ADA is about for particular plaintiffs. The customers who would like to have disabled people handle their accounts are not interests that are protected by the ADA. It is the individual who is disabled who would like to be able to work, and that's what you're really talking about here. It's an important federal interest, all of that, but it's a narrowly defined one, at least for purposes of irreparable harm. Well, that's a part of it. I mean, the ADA does kind of encapsulate within it violations of equal protection, and that's kind of – yes, we're alleging a violation of a statute by failing to allow for reasonable accommodations, but what that implicates is 14th Amendment considerations under the Equal Protection Clause and the ability of a state legislator to exercise their fundamental right to vote and to participate in democracy. So I don't think that those things can be separated. The fundamental rights are vindicated through this statute, which Congress has said applies to states, abrogates sovereign immunity, applies to state legislators, state legislatures. So I think those are all one and the same, essentially, in this context anyway. Any additional questions? Thank you, Counselor. Thank you. Thank you, Attorney Piedra. At this time, if you would mute your device, and Attorney Garland, if you would introduce yourself on the record. Thank you. Thank you, Your Honors. My name is Sam Garland, and I represent the appellee in this matter. I'm happy to get to the mootness question at any point because it's obviously something we haven't briefed, and I do think that several judges have made very good points about it. But more generally, with respect to the legislative immunity question, I think a lot of what you heard today and, frankly, a lot of what's been in the briefing before this court and below is really a desire by the plaintiffs that the law operate in a way that it frankly doesn't. This court's decision in Harwood and the Supreme Court's decision in Consumers Union answer all of the big questions, as far as we can see it, that this appeal presents. Harwood makes clear that the enactment and enforcement of a legislative rule governing how legislative bodies conduct themselves is a legislative act, and that's what this is. And I'm not hearing any dispute on appeal, though there was below, that there is a legislative rule here that prohibits remote participation in full sessions of the House of Representatives. Harwood and Consumers Union both involved official capacity claims. Consumers Union was explicit on that, and I think the categorical argument that legislative immunity doesn't apply to those claims has been abandoned. But we think to the extent that that argument remains before this court, there is no support for it under binding precedent or under the several other circuits that have said that it does apply to official capacity claims brought against state officials. Mr. Garland, can I ask again a hypothetical question? Assume that the rule was that no Asian American members of the legislature would be permitted to vote. Would Harwood govern that? I don't think it would, Your Honor. I think that would be invidious discrimination as contemplated. Just to follow up the point, not to establish it, but to follow it up, in the order of magnitude, racial discrimination or ethnic discrimination is of a higher magnitude than discrimination against the disabled? As a matter of constitutional law, Your Honor, it is in terms of fundamental rights and suspect classes. The disabled have not been found to be a suspect class as a matter of equal protection. But they have been found by the Congress of the United States, acting under the 14th Amendment, to be a class that is entitled to protection as a matter of insistent national policy. I agree with that, Your Honor. But the second portion of my response to the question with respect to Asian Americans would be, that would be a rule that is facially discriminatory. That would be a rule that specifically identified a class, a protected class, and said, you cannot participate in a particular way. This rule doesn't do that. This rule is as facially neutral as Chief Judge McCafferty found, and it only is a blanket prohibition on remote access. That simply begins the discussion. It doesn't end it. It can be protecturally neutral, stated in a neutral fashion, and still be discriminatory. And so we asked a deeper question here. That's why I was asking my question about, are you focusing on that to your friend? Are you focusing just on the ADA? He didn't want to answer that question, but that's really what it's about. And so now we're here wrestling with the problem of, can you have a rule, the effect of which is to undercut the ADA? Not facially, but as a matter of application. Your Honor, yes, and I do think Harwood actually addresses that as well. Harwood makes clear that for determining whether a particular rule is invidiously discriminatory as applied, you look to whether there is any rational basis. It's basically rational basis review. And in that case, the court found that there were in the factual record, and I frankly think there are ample rational bases for supporting the prohibition here as well. They're reflected in the transcript from the hearing. They're reflected in the attachments to the preliminary injunction filings. What really could they be? It is very difficult in the third branch to have virtual meetings, as the periodic freezings of our faces indicate. On the other hand, people make efforts to do that, and the rehab money that you received or your clients received was precisely for that purpose. Excuse me, sorry. No, I'm sorry. Go ahead, Mr. Kramer. The challenge is frankly largely a logistical one, and I do think that it is identified with some specificity in the record here. The New Hampshire House of Representatives, I believe, is the largest House of Representatives among any of the states. The New Hampshire General Court is, I think, the third or fourth largest English-speaking bicameral legislature in the world. And so when you're talking about 400 representatives who are all appearing at the same time, who use a particular system that has been used in the House sessions for quite a long period of time, and whose votes are recorded in a particular way, it is a significant logistical challenge. And we presented, I think, a significant amount of evidence to that effect through both the clerk of the House of Representatives But all 400 wouldn't be participating remotely. It's just those with the underlying health conditions. Yes, Your Honor, but we've never had a clear indication from the plaintiffs in this case just how many people they think would be entitled to this. And I think that does get to, I believe, Judge Kayada's line-drawing question as to how many people are we talking about, what sort of disability...  which is, I think, I can count them on two hands. In the proceedings below, Your Honor, the plaintiffs indicated that they were looking for a ruling that would affect up to 25 or 30 people, I believe. We never did discovery into that. This happened on a very fast basis. But they aren't plaintiffs in this case. I mean, if we hold to the basics of litigation, that only those who bring the lawsuit are capable of receiving some kind of benefit, we're not talking about the third largest bicameral legislation in the Anglo-Saxon world. Not in terms of the number who would participate remotely, Your Honor, but we are talking about having to make sure that they are able to participate in a way that's consistent with how other members of the House participate, whether it's through the voting system, which is a particular remote system that I understand is not compatible with an application like what we're using here, or Zoom, or something like that. Making sure that they can get the Speaker of the House's attention through the normal order that's reflected in the House rules. Ensuring that they have an opportunity to propose amendments, to object, to ask for reconsideration in the normal courts. Did you do it remotely for a while? No, Your Honor. So House committee meetings, which are far smaller, have operated remotely, and I think they're functionally no different than really what we're doing today here, with maybe a couple of dozen people all participating or largely participating remotely. But there is no precedent whatsoever for a remote House session of the full House of Representatives at any point during the pandemic. You seem to be addressing the merits of the ADA Rehabilitation Act claims. You seem to be answering the questions about legislative purpose by saying that, well, there's a rational basis, or we've got a reason, or this would be hard to make this accommodation. Your Honor, I... And the district court never did that, right? That's correct, Your Honor. And I frankly don't think that she ever had to. And so, as I understood Judge Woodlock's question, it was, where is the outer bounds of legislative immunity, which I think Harwood acknowledged based on some speech or debate precedent, there is a potential outer bounds to legislative immunity for invidiously discriminatory rules or legislative acts. And so I think to the extent there were an as-applied challenge here, that's where the rational basis analysis comes in. We did present that in our filings below. Chief Judge McCafferty never specifically addressed it. I think, frankly, she must have rejected that argument by implication because it was throughout the filings. But in terms of the rule on its face, Judge McCafferty did address that, and she noted that it is a facially neutral rule. And I think largely the analysis starts and ends there with respect to invidious discrimination. Well, that wouldn't be... I mean, here's a facially neutral rule. To cast your vote in the New Hampshire House, you must stand and rise to cast your vote. Now, you've got seven legislatures in wheelchairs that can't do that. They therefore ask, can we stay sitting and not stand and rise? And the Speaker of the House says, no, facially neutral rule. Somehow I think we could get a handle on that. I think that would be more of the fact-bound inquiry as applied, Your Honor, whether there is any rational reason for it or if it's simply a rational rule. I think in that situation we would have some fact-finding, and the fact-finding would probably find that it's irrational or not a reasonable accommodation. Here we have another facially neutral rule that someone is saying is having an effect on barring disabled persons from the proceeding. And yet we don't have fact-finding below, do we, on whether it's either rational or reasonable or the like. I would say, Your Honor, that there is, at least implicitly, fact-finding. It's not in Judge McCafferty's opinion as far as I can recall, but it was presented to her both in terms of the evidence presented and the legal arguments. But we're not interested in what was presented. We're interested in fact-finding. We have no fact-finding that it wouldn't be easy for you to accommodate this request, particularly with the federal funds that you took. And when you took those federal funds, you said you wouldn't discriminate against handicapped people. And then you turn around and you're not using the federal funds in a way that would allow them to participate. Don't we need some fact-finding on that? I don't think you do, Your Honor. I think you can look at the factual record and you can defer to it. And I believe, and I hope I'm not getting state and federal precedent confused here, but I believe that to the extent that the determination is supportable in the record, as a matter of fact or law, you defer to what the district court did here. And she was presented with those arguments directly. She was presented with evidence on both sides of that issue. But if I said to you, you made a presentation that is rational, and I'm having a hard time trying to understand a rational basis for discriminating against people with underlying conditions. What is your response to that? Your Honor, I would dispute that this is discrimination in the first place, just as a matter of the framing of the question. If you show up and die, that's going to be discrimination. You die because you have an underlying condition that makes you susceptible to a virus. So, Your Honor, I don't believe that the plaintiffs sufficiently proved that that was going to be the outcome or even a likely outcome. In addition to the logistical challenges of allowing this to occur with certain people coming in remotely and certain people in person, we did also point to the steps that were being taken in terms of keeping people apart and making masks available, making sure there was plenty of space between people, and taking a number of precautions in the context of the joint session that occurred back in February. And those were also facts that were in the record that Judge McCafferty had before her in this case. Are masks mandatory? I don't believe they're mandatory. In terms of the February, I believe folks who were not wearing masks, Judge Cayota, were asked to separate from folks who were. And did they? In terms of the February. In other words, your speaker is requiring people to come in who have underlying conditions and be in the same room with people who are refusing to wear masks? He's not requiring them to interact closely, certainly. And I think when you're coming in and out of the facility, masks were required. So, Your Honor, how the February session happened occurred after the district court's ruling in this case. And so I'm not as familiar with the specifics of that. But there were a number of precautions taken, including, I believe, a requirement for masks when people were interacting with one another. It was only for folks who wanted to sit in their seats and not have to approach anywhere that didn't want to wear masks that I believe were permitted not to do so. So there were significant precautions taken, and they were presented to the district court in this case. So I would like to just briefly address, I think, the big thrust of the plaintiff's argument, which is what we heard most of today, which is that these claims are really claims against the state by operation of the Rehabilitation Act and the ADA. And Judge Cayota and Judge Woodlock, you really hit, I think, the nail on the head with respect to that argument, which is there is no one other than the speaker named in this lawsuit. There are no allegations against anyone other than the speaker and no relief sought from anyone other than the speaker in this lawsuit and against whom an order could be enforced other than the speaker or some official operating in his official capacity. So what the claims in this case pretty plainly are, based on the allegations in the complaint, are claims asking a public official to conform his conduct with the plaintiff's view of federal law. That's an ex parte Young claim. It's an ex parte Young claim, whether brought under the ADA or Rehabilitation Act or under 1983. There is no assertion anywhere in the complaint. And frankly, it was a fairly late breaking argument that these claims really operate against the sovereign. And every other circuit, every other numbered circuit that deals with claims against the state regularly, other than this one, has said that you can bring an ex parte Young claim against a state official to conform his or her conduct to federal law. If the plaintiffs had raised claims against the state or against the House of Representatives, we would have had Eleventh Amendment arguments to raise. It's not a foregone conclusion that the Eleventh Amendment doesn't apply. We didn't do that, and we would be prejudiced if this case were sent back down for some reason in light of the fact that the plaintiffs pleaded it one way and then started arguing something else. And ultimately, though, I don't think that any of this really matters because consumers union is unambiguous that a state entity, in that case, the Virginia Supreme Court, based on reasoning that the Virginia legislature, had it passed the rule, would have been able to invoke immunity. I don't think it matters whether you bring it against an official or against the state or against the New Hampshire House of Representatives. But ultimately, this is a claim alleged against the Speaker of the House in its official capacity. Could you remind us what the record shows about what other legislatures in the other states have been doing for their sessions? That I'm not sure, Your Honor. I would have to double-check that. I know that a number of them have done sessions remotely. I know that none of them are nearly as big, or at least as big, as the New Hampshire House of Representatives for a full session. And then, with respect to the claim against the state argument, the one last point I'd make is there's a 14th Amendment claim alleged here. That claim can't operate against the state, consistent with the 11th Amendment. It's based on the same... Your Honor, do you mind if I finish my point? It's based on the same allegations. It seeks the same relief as the Rehabilitation Act and ADA claims. And I have a hard time seeing how one would operate only against an official, but the others somehow were meant to operate against the state. Thank you. Thank you, Attorney Garland. At this time, if you would please mute your audio and video. And, Attorney Piedra, you have two minutes for rebuttal. Please reintroduce yourself on the record. Thank you, Your Honor. It's Attorney Israel Piedra for the appellants, again, on this matter. I think the court has identified the issue here through the hypothetical about the disabled person who can't rise from their wheelchair to vote. In my mind, that is completely analogous to the situation here. Whether... And opposing counsel just admitted that the court would have jurisdiction over that situation under the ADA. They're both facially neutral rules that apply in a way that discriminates against disabled persons and prevents them from voting. That's precisely what the Title II and the Rehab Act were meant to remedy. And that's why the Congress exercises extraordinary power under the 14th Amendment to institute these regulations upon states and state legislatures. The court made a statement in Harwood that the doctrines and protections must match its purposes. And as we argued in our briefs, the application of the doctrine here simply doesn't fulfill the immunity's purposes. There's no personal liability at stake here. There's no chilling effect that's going to occur on a legislator's individual actions. In fact, the doctrine here as applied would contravene its purpose by preventing legislators from participating in government. The courts have identified this quote-unquote distraction interest as a concern, distracts the legislators from doing their work. Well, here it's preventing certain legislators from doing their work, while not even targeting individual actions by a legislator. And as I mentioned previously, that highlights the rights that are at stake here, the fundamental right to vote and participate in democracy, which has been kind of recognized as the most important right that there is, and vindicated through a powerful anti-discrimination statute. And that really contrasts to the situation in Harwood. May I finish my thought, Your Honor? Yes, quickly. I was just going to contrast that quickly to the situations in Harwood and Consumers Union when we're talking about the rights of lobbyists to sit on the House floor and the rights of lawyers to be listed in advertising directories. Respectfully, we think that the rights implicated here are much more severe and that this is an extraordinary situation where legislative immunity should not apply. Thank you. Thank you, Counselor. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the Court. God save the United States of America and this Honorable Court. Counsel, you may disconnect from the meeting.